**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED
2014 SEP 10 AM 11:25
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY

**UNITED STATES OF AMERICA,**
**Plaintiff,**

**-vs-** **Case No. A-13-CA-059-SS**

**HONGYAN LI,**
**Defendant.**

---

# ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically the United States' Motion for Summary Judgment [#17], and Defendant Hongyan Li's Response [#22]; and Defendant Hongyan Li's Motion for Summary Judgment [#18], the United States' Response [#21], and Defendant Hongyan Li's Reply [#23]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the United States' motion and DENYING Defendant Li's motion.

## Background

This is an action brought by the United States (the Government) under 8 U.S.C. § 1451(a) to revoke and set aside the August 8, 2007 grant of United States citizenship to Defendant Hongyan Li, and to cancel her Certificate of Naturalization. Li was born in Tianjin, China in 1971, and on November 28, 1996, Li and her then-husband, Wang Naxing, were admitted to the United States. *See* Def.'s Mot. Summ. J. [#18-2], Ex. B; *id.* [#18-1], Ex. A (Li Aff.), ¶¶ 1, 9. On October 20, 2000, she became a lawful permanent resident of the United States. *See* Pl.'s Mot. Summ. J. [#17-1], Pl.'s Appendix (App., Part I), at 3.

On or around March 28, 2006, Li filed an Application for Naturalization (Form N-400). *Id.* Question 15 asked, "Have you EVER committed a crime or offense for which you were NOT arrested?" *Id.* at 9. The answer provided was "No." *Id.* Question 22(b) asked, "Have you EVER been a prostitute, or procured anyone for prostitution?" *Id.* The answer provided was "No." *Id.* Li signed her Form N-400 under penalties of perjury, certifying the answers provide were true and correct and submitted the application for consideration. *Id.* at 11.

On June 18, 2007, United States Citizenship and Immigration Services (USCIS) officer, Swapna Banerjee, interviewed Li concerning her Form N-400. *Id.* Banerjee reviewed with Li her Form N-400 and the answers provided, although the parties disagree as to what questions Banerjee specifically re-asked Li. Banerjee made a few changes to Li's answers on the Form N-400, but there were no changes made to Questions 15 and 22(b). *Id.* at 4, 9. Li again signed under oath the Form N-400 post-interview, certifying the answers provided were true and correct. *Id.* at 9. Li's naturalization application was approved on June 18, 2007. *Id.* at 2.

Following the approval of Li's Form N-400, USCIS mailed her a Notice of Naturalization Oath Hearing (Form N-445). *Id.* at 12–13. This form instructed Li to answer specific questions and certify the answers provided were true and correct. *Id.* at 13. Question 3 asked if, after the date she attended the interview in connection with her naturalization application, she had "knowingly committed any crime or offense, for which [she had] not been arrested?" *Id.* The answer provided was "No." *Id.* Question 8 asked if, after the date she attended the interview in connection with her naturalization application, she had "been a prostitute, procured anyone for prostitution or been involved in any other unlawful commercial vice . . . ?" *Id.* The answer provided was "No." *Id.* On August 8, 2007, prior to taking her oath of allegiance, Li submitted her Form N-445 to USCIS with

her signature, certifying her answers to the questions were true and correct. *Id.* On the same day, USCIS permitted Li to take the oath of allegiance and admitted her to United States Citizenship. *Id.*

Two years later on September 15, 2009, Li was charged in this Court with Enticing Interstate Travel for Purposes of Prostitution in violation of 18 U.S.C. § 2422 and Money Laundering in violation of 18 U.S.C. § 1957. *Id.* at 16–20. The Information alleged Li, beginning on or about March 1, 2004, and continuing through on or about March 6, 2009, "did knowingly persuade, entice, and coerce any individual to travel in interstate and foreign commerce to engage in prostitution and any sexual activity for which a person can be charged with a criminal offense." *Id.* at 16. The Information further alleged beginning on or about August 31, 2005, and continuing through on or about November 7, 2008, Li "did knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000 . . . such property having been derived from a specified unlawful activity . . . ." *Id.* at 16–17. On November 6, 2009, Li pleaded guilty, pursuant to a plea agreement, to running an extensive prostitution ring and deriving substantial income from this illegal activity. *Id.* at 24; Def.'s Mot. Summ. J. [#18-8], Ex. H (Plea Agreement), at 10–21 (detailing the factual basis for the plea). This Court sentenced Li to eighteen months imprisonment on each count to be served concurrently. App., Part I, at 25. In addition, Li forfeited a variety of real and personal property. *Id.* at 28.

On January 23, 2013, the Government filed a complaint in this Court to revoke Li's naturalization pursuant to 8 U.S.C. § 1451(a), and has now filed its motion for summary judgment. The Government contends Li's citizenship should be revoked for three reasons: (1) Li illegally procured her citizenship because she committed unlawful acts, specifically prostitution and money

laundering, which precluded her from establishing the good moral character required under statute; (2) Li illegally procured her citizenship because she provided false testimony during her naturalization application process, which precluded her from establishing the good moral character required under statute; and (3) Li procured her citizenship through willful misrepresentation or concealment of a material fact. Li has filed her own motion for summary judgment, arguing: (1) this revocation proceeding is a violation of her plea agreement; (2) the action is barred by the statute of limitations; and (3) the Government cannot meet its burden on the merits of the revocation.

## Analysis

### I. Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

The Court first addresses Li's threshold arguments regarding her plea agreement and the statute of limitations before turning to the merits of the revocation.

**A. Whether this civil proceeding violates Li's plea agreement**

First, Li contends the terms of the plea agreement she signed in her criminal case preclude this revocation action, undisputedly a civil proceeding. If a guilty plea is entered as part of a plea agreement, the government must strictly adhere to the terms and conditions of its promises. *United States v. Valencia*, 985 F.2d 758, 760 (5th Cir. 1993). Courts apply general principles of contract law to interpret a plea agreement. *United States v. Cantu*, 185 F.3d 298, 304 (5th Cir. 1999). In determining whether the government breached a plea agreement, the court must determine "'whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement.'" *Id.* (quoting *Valencia*, 985 F.2d at 761). If the court finds the government is in violation of the plea agreement, the defendant is entitled to specific performance, which in this case would be dismissal of the revocation action. *See Valencia*, 985 F.2d at 761. The defendant bears the burden of demonstrating the underlying facts establishing the breach by a preponderance of the evidence. *Cantu*, 185 F.3d at 304–05.

Applying principles of contract law, the court should attempt to give effect to the intentions of the parties as expressed in the agreement. *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006). As such, the court should construe the terms of the plea agreement using "their plain, ordinary, and generally accepted meanings." *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007). If the court finds an ambiguity in the plain language of the agreement, then it should consider any parol evidence available to ascertain the parties' intent. *Am. Tobacco Co.*, 463 F.3d at 407.

Li's plea agreement provides the United States Attorney for the Western District of Texas will "not [] use any truthful statement, testimony, or information provided by [Li] under the terms

of this agreement against [Li] at sentencing or as the basis for any subsequent prosecution." Plea Agreement, at 6. The plea agreement also states in its final sentence: "It is further understood by the parties that this agreement does not prevent any government agency from pursuing civil and/or administrative actions against the Defendant or any property." *Id.* at 25.

Li complains this denaturalization proceeding is a "prosecution," and therefore is precluded by the clear terms of the plea agreement. Black's Law Dictionary contains two definitions of "prosecution." First, it means "[t]he commencement and carrying out of any action or scheme," as in "the prosecution of a long, bloody war." BLACK'S LAW DICTIONARY (9th ed. 2009). Second, it means "[a] criminal proceeding in which an accused person is tried." *Id.*[1] In the context of a plea agreement, the second definition is the applicable one, and the Court interprets the unambiguous language of the plea agreement only to prohibit the United States Attorney for the Western District of Texas from using information provided by Li under her plea deal as the basis for a subsequent criminal proceeding against Li.[2]

Furthermore, the relevant case law compels this conclusion. The Fifth Circuit has held a plea agreement in which the government agrees not to further prosecute the defendant for the conduct that is the subject of the plea does not bar the government from bringing an action for a civil penalty based on the same conduct. *Bickham Lincoln–Mercury Inc. v. United States*, 168 F.3d 790, 792–94 (5th Cir. 1999). In *Bickham*, the defendant failed to file a form required by the Internal Revenue

[1] Li focuses on the definition of "prosecute," which Black's first defines as "[t]o commence and carry out a legal action" and second as "[t]o institute and pursue a criminal action," to argue this civil revocation proceeding is prohibited by the plea agreement. *See* Def.'s Mot. Summ. J. [#18], at 10; BLACK'S LAW DICTIONARY (9th ed. 2009). The word that appears in the plea agreement, however, is "prosecution" as a noun, not "prosecute" as a verb. *See* Plea Agreement, at 6.

[2] Because the Court finds the language in the plea agreement to be unambiguous, it need not address Li's arguments concerning parol evidence.

Code, which gave rise to a criminal information filed by the government. *Id.* at 792. The defendant entered a plea agreement in which the government would "not [] further prosecute" the defendant for failure to file the relevant form. *Id.* Subsequently, the IRS pursued a civil penalty against the defendant for failure to file the same form that was the subject of the criminal action. *Id.* The defendant complained this was a violation of his plea agreement, but the Fifth Circuit affirmed the district court's conclusion to the contrary. *Id.* The Fifth Circuit analyzed the ordinary meaning of "prosecute," concluding it typically refers to criminal proceedings, highlighted the separate statutory provisions within the Internal Revenue code for criminal and civil penalties regarding the defendant's behavior, and noted the fact the plea agreement specifically mentioned prosecution but not "civil liability." *Id.* at 793–94. Faced with a similar scenario as the one facing this Court, a fellow district court, following *Bickham*'s guidance, concluded the United States did not breach a plea agreement whereby it agreed not to further prosecute the defendant when it subsequently sought revocation of the defendant's citizenship under 8 U.S.C. § 1451(a) based on the same conduct at issue in the criminal proceeding. *United States v. Mwalumba*, 688 F. Supp. 2d 565, 573–74 (N.D. Tex. 2010).

*Bickham* controls this case. Here, the United States prosecuted Li for enticing prostitution and related money laundering, signed a plea agreement in which it agreed the information Li provided as part of the plea deal would not form the basis of a subsequent prosecution, and now brings a civil action under 8 U.S.C. § 1451(a) based on the same conduct that was the subject of the plea agreement. Just as the IRS was not in breach of its plea agreement in *Bickham* and just as the

United States was not in breach of its plea agreement in *Mwalumba*, the United States is not in breach of the plea agreement in this case.[3]

**B. Whether this action is time-barred**

Li also argues since Congress did not expressly provide a statute of limitations for filing a citizenship revocation action, it is subject to the "catch-all" statute of limitations provided in 28 U.S.C. § 2462. The statute provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462. Li contends denaturalization is a forfeiture of citizenship and a penalty for wrongful conduct. Since Li naturalized on August 8, 2007, she argues the statute of limitations lapsed on August 8, 2012, but the Government did not initiate the instant action until January 23, 2013, making the claim untimely.

The Court is not moved by this argument largely because Li fails to cite a single case applying § 2462 or its predecessor, 28 U.S.C. § 791, to a revocation action under 8 U.S.C. § 1451(a). In fact, this argument has been made on few occasions, and courts addressing it have quickly rejected it. *See, e.g.*, *United States v. Hauck*, 155 F.2d 141, 143 (2d Cir. 1946) (characterizing the argument § 791 applied to a denaturalization action as "so clearly without merit that [it] may be disposed of summarily," as a "hopeless clutching at straws," and concluding the statute is "completely

---

[3]Li attempts to distinguish her case from the facts of *Bickham* because unlike the plea agreement in *Bickham*, Li's plea deal explicitly mentions civil liability, stating no "government agency" is prohibited from pursuing civil actions against Li. According to Li, since "the United States," which is not a government agency, brings this denaturalization proceeding, the action violates the plea agreement. The Court does not agree this sentence, which merely clarifies no government agency is prevented from pursuing a civil or administrative action against Li, prevents the United States from pursuing a civil revocation proceeding under 8 U.S.C. § 1451(a).

irrelevant"). More recently, the Third Circuit reasoned "'[S]tatutes of limitation sought to be applied to bar rights of the Government must receive a strict construction in favor of the Government.'" *United States v. Rebelo*, 394 F. App'x 850, 852–53 (3d Cir. 2010) (unpublished) (quoting *Badaracco v. Comm'r*, 464 U.S. 386, 391 (1984)). The *Rebelo* court recognized the Supreme Court, in interpreting § 791, held "'penalty or forfeiture' means 'something imposed in a *punitive* way for an infraction of public law.'" *Id.* at 853 (quoting *Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412, 423 (1915)). Since denaturalization "serves 'as a remedy for citizenship fraudulently obtained,' [it] 'is regarded not as punishment but as a necessary part of regulation naturalization of aliens.'" *Id.* (quoting *E.B. v. Verniero*, 119 F.3d 1077, 1101–02 (3d Cir. 1997)).

Finally, the Court notes the Supreme Court, while it did not specifically address a statute of limitations argument, has addressed the merits of revocation actions brought long after five years from the date of naturalization. *See Kungys v. United States*, 485 U.S. 759, 764 (1988) (revocation action brought twenty-eight years after naturalization); *Costello v. United States*, 365 U.S. 265, 265–68 (1961) (revocation action brought thirty years after naturalization). In light of these opinions, the Court declines to adopt Li's novel argument, which would have the Court bar a revocation action brought less than six years after naturalization.

For these reasons, the Court concludes the "catch-all" statute of limitations of 28 U.S.C. § 2462 does not apply to this revocation action under § 1451(a).

### C. Whether the Government has met its burden to denaturalize Li

Because Li's admitted prostitution activities statutorily bar her from establishing the good moral character necessary for naturalization, the Court agrees with the Government that Li illegally procured her citizenship.

The Supreme Court has recognized "the right to acquire American citizenship is a precious one and that once citizenship has been acquired, its loss can have severe and unsettling consequences." *Fedorenko v. United States*, 449 U.S. 490, 505 (1981) (citations omitted). As such, "the Government 'carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship.'" *Id.* (quoting *Costello v. United States*, 365 U.S. 265, 269 (1961)). The evidence justifying revocation of citizenship must be "'clear, unequivocal, and convincing'" and not leave "'the issue in doubt.'" *Id.* (quoting *Schneiderman v. United States*, 320 U.S. 118, 120 (1943)). "Any less exacting standard would be inconsistent with the importance of the right that is at stake in a denaturalization proceeding." *Id.* at 505–06. Nevertheless, "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Id.* at 506. "Failure to comply with any of these conditions renders the certificate of citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside." *Id.* (citations omitted).

Title 8 U.S.C. § 1451(a) provides the order admitting a naturalized citizen to citizenship may be revoked and set aside and the certificate of naturalization may be cancelled if the order and certificate were "illegally procured or were procured by concealment of a material fact or by willful misrepresentation." Here, the Government has advanced two grounds for why Li's citizenship was illegally procured and also contends it was procured by concealment of a material fact or by willful misrepresentation. Because the Court agrees with the Government's first argument concerning illegal procurement, it need not address the other two grounds.

To be statutorily eligible for naturalization, an individual must demonstrate that during the time period prescribed by statute she "has been and still is a person of good moral character." 8 U.S.C. § 1427(a)(3). For Li, this statutory period began five years before the date on which she

filed her application for naturalization with the Immigration and Naturalization Services (INS) (approximately late March or early April 2006),[4] and ended on the date she took the oath of allegiance and was naturalized as a United States citizen (August 8, 2007). *See id.* The concept of "good moral character" is defined by the Immigration and Nationality Act (INA) and the regulations promulgated under it. Both the INA and the regulations include lists of specified acts and characteristics that automatically preclude a person from establishing good moral character. *See* 8 U.S.C. § 1101(f)(1)–(9); 8 C.F.R. § 316.10(b)(1)–(3)(ii). Most relevant to this case, § 1101(f)(3) provides no person shall be regarded as having the required good moral character if she is or was "a member of one or more of the classes of person, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 1182(a) of this title." 8 U.S.C. § 1101(f)(3). Section 1182(a) describes classes of aliens ineligible for visas or admission to the United States, and paragraph (2)(D) is titled "Prostitution and commercialized vice" and describes the following categories of aliens as inadmissible:

> Any alien who—
>
> (i) is coming to the United States solely, principally, or incidentally to engage in prostitution, or has engaged in prostitution within 10 years of the date of application for a visa, admission, or adjusted status,
>
> (ii) directly or indirectly procures or attempts to procure, or (within 10 years of the date of application for a visa, admission, or adjustment of status) procured or attempted to procure or to import, prostitutes or persons for the purpose of prostitution, or receives or (within such 10-year period) received, in whole or in part, the proceeds of prostitution . . .

8 U.S.C. § 1182(a)(2)(D).

---

[4] The Court is not entirely clear on when Li filed her Form N-400, but she signed it on March 28, 2006. Whether Li actually filed her application with the INS this same day or shortly thereafter in April 2006 is immaterial to the Court's ultimate conclusion.

Moreover, the regulations promulgated under the INA state "an applicant [for naturalization] shall be found to lack good moral character if during the statutory period the applicant: . . . (vii) is or was involved in prostitution or commercialized vice as described in section 212(a)(2)(D) of the Act." 8 C.F.R. § 316.10(b)(2)(vii).

The undisputed facts in this case clearly demonstrate Li is and was statutorily barred from establishing good moral character under the statute and its regulations. Li's guilty plea acknowledges that "[b]eginning on or about March 1, 2004, and continuing until on or about March 6, 2009 . . . [Li] did knowingly persuade, induce, entice, and coerce any individual to travel in interstate and foreign commerce to engage in prostitution and any sexual activity for which a person can be charged a criminal offense." *See* Plea Agreement, at 10. The factual basis of Li's plea agreement details the extensive prostitution ring she operated and the substantial income she derived from her illegal activities. *Id.* at 10–21. This admitted behavior could not more obviously fall within 8 U.S.C. § 1182(a)(2)(D)(ii) and 8 C.F.R. § 316.10(b)(2)(vii). Consequently, Li is statutorily barred from establishing she had the required good moral character during the relevant time period, meaning she was statutorily ineligible for naturalization under 8 U.S.C. § 1427(a)(3). Therefore, Li's citizenship was illegally procured, and it may be revoked under 8 U.S.C. § 1451(a).

The parties waste substantial time in their briefs arguing over whether other provisions of the INA and the related regulations operate to bar Li from establishing the requisite good moral character. Specifically, the parties focus on the "catch-all" provisions in the statutory scheme providing non-enumerated acts or characteristics can demonstrate an applicant lacks good moral character. *See* 8 U.S.C. 1101(f) ("The fact that any person is not within one of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral

character."); 8 C.F.R. § 316.10(b)(3)(iii) (explaining that in the absence of extenuating circumstances an "applicant shall be found to lack good moral character if, during the statutory period, the applicant: . . . (iii) [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2)"). These provisions, however, are inapplicable to this case because Li is "within one of the foregoing classes," and her acts do "fall within the purview of § 316.10(b)(2)." As described above, Li's prostitution-related activities fall squarely within 8 U.S.C. § 1101(f)(3) (via 8 U.S.C. § 1182(a)(2)(D)) and 8 C.F.R. § 316.10(b)(2)(vii). Therefore, the Court finds the parties arguments concerning the "catch-all" provisions and whether any extenuating circumstances existed, which might excuse Li's prostitution-related activities, irrelevant.[5]

---

[5]The parties' focus on the "catch-all" provisions appears to stem from confusion over the pleadings and both parties' apparent misapprehension of the statute. Li argues the Government restricted itself in its complaint to arguing Li's conduct falls within the "catch-all" provision of 8 C.F.R. § 316.10(b)(3)(iii). In other words, Li argues the Government, instead of asserting the substantive provisions regarding prostitution, asserted prostitution (and money laundering) as constituting "unlawful acts" as contemplated by § 316.10(b)(3)(iii). Framed as such, Li spends considerable time arguing Li is entitled to the "extenuating circumstances" exception of § 316.10(b)(3)(iii). *See* Def.'s Mot. Summ. J. [#18], at 15–16. Indeed, this is the only defense mounted by Li to the prostitution-related activity as a bar to a good moral character finding. Furthermore, Li contends the Government cannot now assert the substantive prostitution bars (i.e., 8 U.S.C. § 1182(a)(2)(D) and 8 C.F.R. § 316.10(b)(2)(vii)) because "they failed to allege it as grounds for denaturalization in their Complaint." Def.'s Resp. [#22], at 6. As articulated above, however, § 316.10(b)(3)(iii) does not apply to involvement in prostitution, and the Court rejects Li's attempt to constrain the Government to arguing only this "catch-all" provision. First, while the Government's complaint is no model for pleading, it does capture the basic premise that Li's prostitution activities bar her from showing the requisite good moral character. *See* Complaint [#1], at 4 (describing Li's guilty plea based on her prostitution activity); at 6 (citing the enumerated classes of 8 U.S.C. § 1101(f)(1)–(8)); at 7 (asserting Count I's theory that Li's criminal history shows she lacked good moral character). Moreover, the summary judgment briefing shows the Government seeks to show Li was statutorily barred by her prostitution activities. *See* Pl.'s Mot. Summ. J. [#17], at 10 (arguing "an admitted or convicted prostitute" is statutorily barred from showing good moral character). These contentions put Li on notice of the Government's position, and her attempt to restrict the Government to arguing the "catch-all" provision rather than the substantive prostitution provisions evinces her awareness. Li makes this technical pleading argument because she knows she has no defense to the substantive prostitution provisions. Her sole attempted defense is "extenuating circumstances," but this cannot be a defense to involvement in prostitution. *See* § 316.10(b)(2)(vii) (listing involvement in prostitution as a bar to good moral character); § 316.10(b)(3)(iii) (providing extenuating circumstances may excuse the commission of unlawful acts "although the facts do not fall within the purview of § 316.10(b)(1) or (2)"). The bottom line reality, which Li cannot avoid, is the undisputed facts of this case show Li engaged in prostitution activity, which statutorily bars her from demonstrating good moral character. Inartful pleading, which ultimately does not mislead the defendant or materially affect the substance of the complaint, does not change this conclusion.

## Conclusion

The Government initiated this action to revoke the citizenship of Defendant Hongyan Li, and contrary to Li's contentions, this civil proceeding does not violate the terms of her plea agreement nor is it time-barred by any statute of limitations. The undisputed facts establish Li's prostitution-related activities during the relevant time period statutorily barred her from demonstrating the required good moral character to be eligible for naturalization. Consequently, the Government has met its burden and is entitled to judgment.

Accordingly,

IT IS ORDERED that the United States' Motion for Summary Judgment [#17] is GRANTED;

IT IS FURTHER ORDERED that Defendant Hongyan Li's Motion for Summary Judgment [#18] is DENIED;

IT IS FINALLY ORDERED that Defendant Hongyan Li's Certificate of Naturalization be CANCELLED. Defendant Li must surrender and deliver her certificate and any other indicia of United States citizenship to the Attorney General, or his representatives, including her United States passport.

SIGNED this the 10th day of September 2014.

Sam Sparks

SAM SPARKS
UNITED STATES DISTRICT JUDGE